<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANN G. JOHNSON, | : | |
| | : | CIVIL ACTION NO. 05-4059 (MLC) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

<u>**COOPER, District Judge**</u>

This matter is before the Court on the application of the plaintiff, Ann G. Johnson (the "plaintiff"), for judicial review of the final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  (Dkt. entry no. 1.)[1]  The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g).  The Court, for the reasons stated herein, will affirm the Commissioner's decision.

<u>**BACKGROUND**</u>

The plaintiff filed a claim for SSI payments on June 20, 2000, and applied for DIB on December 11, 2002.  (A.R. at 80-83.) The plaintiff claimed that she stopped working as of December 29, 1999, and became disabled on June 1, 2000, due to chronic neck

---

[1] The plaintiff is also referred to by her former married name, Ann G. Reynolds, in the Administrative Record ("A.R."). (<u>See, e.g.</u>, A.R. at 106.)

and low back pain resulting from multiple car accidents and two spinal fusions.  (Id. at 21, 80, 107.)  The claims were denied initially and on reconsideration, and the plaintiff filed a timely request for a hearing before an administrative law judge on March 27, 2002.  (Id. at 18, 56-57.)  Administrative Law Judge Daniel W. Shoemaker, Jr. ("ALJ") conducted a hearing on December 8, 2004, in which both the plaintiff and a vocational expert, Leo Hamilton, appeared and testified.  (Id. at 568-601.)[2]

The ALJ issued a decision on March 25, 2005, finding that the plaintiff "[was] not disabled within the meaning of the Social Security Act."  (Id. at 19, 29.)  The ALJ found that the plaintiff, inter alia, (1) met "the nondisability requirements" to receive DIB through March 25, 2005, (2) did not have an impairment that "me[t] or medically equal[ed]" any impairment listed in section 20, part 404, subpart P, appendix 1, of the Code of Federal Regulations ("CFR"), and (3) retained the residual functional capacity to perform "a wide or significant range of sedentary work" available in the national economy.  (Id. at 27-28.)  Therefore, the ALJ concluded that the plaintiff was not (1) entitled to a period of disability and DIB based on her

---

[2] The plaintiff failed to appear at a hearing that was originally scheduled on July 16, 2003, and an Order of Dismissal was issued on September 23, 2003.  (A.R. at 18.)  The plaintiff filed a request for review on March 8, 2004, and the Appeals Council vacated and remanded the matter to the ALJ for further proceedings on April 5, 2004.  (Id.)

Title II application, or (2) eligible for SSI payments based on her Title XVI application.  (Id. at 28-29.)  The plaintiff requested a review of the ALJ's decision by the Appeals Council on May 20, 2005.  (Id. at 14.)  The Appeals Council denied the plaintiff's request for review on June 17, 2005.  (Id. at 6.)  Accordingly, the ALJ's March 25, 2005 decision was adopted as the Commissioner's final decision.  The plaintiff appealed on August 17, 2005.

## DISCUSSION

### I.   Standard Of Review

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  The Court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for a rehearing.  Id.  However, this judicial review is limited.  The Court must affirm the Commissioner's decision regarding disability benefits if an examination of the record reveals that the findings of fact are supported by substantial evidence.  Id.; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" in the context of a social security matter is defined as less than a preponderance of the evidence but "more than a mere scintilla," i.e., such evidence "as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This standard "is deferential

3

and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

The Court, despite the deference given to administrative decisions, "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence." Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.3d 110, 114 (3d Cir. 1983). "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision provided that the record contains substantial evidence supporting that decision. Rivera v. Shalala, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995). The Commissioner is required, however, to address and reconcile medical evidence that would support a contrary conclusion. Schaudeck, 181 F.3d at 434-35.

## II. Determining Eligibility For Disability Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

4

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a person is "disabled."  In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  If the claimant is so engaged, the ALJ will find that the claimant is not disabled and the application for disability benefits will be denied.  Id. § 404.1520(b).  If the claimant is not employed, the ALJ will consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step.  Id. § 404.1520(a)(4)(ii).  A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions.  Id. §§ 404.1521(a)-(b),

5

416.921(a)-(b).  A claimant who does not meet this requirement is not disabled.  Id. § 404.1520(c).  In essence, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows severity, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the Code of Federal Regulations ("CFR").  20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals a listed impairment, the claimant is presumed to be disabled, and the evaluation ends at this stage.  Id. § 404.1520(d).  If the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four.  Id. § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  Id. § 404.1520(a)(4)(iv).  If the claimant can resume the former occupation, the claimant will not be considered disabled.  Id.  If the claimant cannot resume previous work, the ALJ moves to step five and considers the claimant's ability to perform other work that is available in the national economy.  Id. §§ 404.1520(a)(4)(v), 404.1520(e).  This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work

6

experience.  Id.  A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy.  Id. § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment.  Id.

### III. Analysis

The plaintiff generally avers that the ALJ's findings are not supported by substantial evidence.  (Pl. Br., at 2, 4.)  Specifically, the plaintiff argues that the ALJ failed to (1) articulate a reason for finding that her impairments did not meet or equal in severity one or more of the Listings, (2) give sufficient consideration to the reports of her treating physician, Dr. Glastein, (3) adequately explain the basis for determining that she had a sedentary RFC, and (4) properly evaluate her subjective complaints of pain.  (Pl. Br., at 9-24.)

In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all evidence and give some reason for discounting the evidence [the ALJ] rejects."  Plummer, 186 F.3d at 429.  The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being

7

rejected.  <u>Cotter v. Harris</u>, 650 F.2d 481, 482 (3d Cir. 1981).
Rather, a short sentence or paragraph explaining the basis upon
which the ALJ is rejecting evidence will suffice.  <u>Id.</u>  While the
ALJ is not required to reference each and every treatment
notation with particularity in the analysis, the ALJ must
"consider and evaluate the medical evidence in the record
consistent with [the] responsibilities under the regulations and
case law."  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir.
2001).  An ALJ "may choose whom to credit" when a conflict in the
evidence exists, but may not "reject evidence for no reason or
for the wrong reason."  <u>Plummer</u>, 186 F.3d at 429.  This policy
allows the Court to properly review the ALJ's decision pursuant
to Section 405(g) to determine whether the decision is supported
by substantial evidence.  <u>Cotter</u>, 642 F.2d at 705.  The Court,
without an indication as to what evidence the ALJ considered or
rejected, "cannot tell if significant probative evidence was
credited or simply ignored."  <u>Id.</u>

### A. The Sufficiency of the ALJ's Explanation at the Third Step of the Sequential Evaluation

The plaintiff asserts that the ALJ erred in failing to
provide a sufficient explanation as to why he concluded that the
plaintiff's impairments did not satisfy any of the Listings at
the third step of the sequential evaluation.  (Pl. Br., at 9.)
Specifically, the plaintiff contends that the ALJ failed to (1)
describe the requirements of Listings 1.04 and 11.18, (2) explain

why he chose to evaluate the plaintiff's impairments against Listings 1.04 and 11.18, and (3) explain why he found that the plaintiff's impairments did not meet or equal the severity of the impairments in those Listings.  (Id. at 11.)

The plaintiff's assertion that the ALJ needed to provide a technical description and evaluation of the Listings used in review is without merit.  The ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, the ALJ's findings need only provide "sufficient development of the record and explanation of findings to permit meaningful review."  Id.[3]  Here, the ALJ's opinion provided a thorough review of all of the medical records and a comprehensive discussion of the plaintiff's condition to create a sufficient basis for judicial review.

The ALJ discussed the evidence relating to, inter alia, (1) the plaintiff's motor vehicle accident in October 1996, which caused herniated discs at the C5-6 and C6-7 levels, (2) the successful anterior fusion at both the C5-6 and C6-7 levels, (3) the plaintiff's motor vehicle accident in February 1998 and December 1998, (4) the lumbar decompression and spinal fusion at

---

[3] The ALJ did not need to provide a detailed explanation as to why he focused on Listings 1.04 and 11.18.  Listings 1.04 and 11.18 are the only Listings applicable to the plaintiff's impairments.  Listing 1.04 comprises of disorders of the spine, and Listing 11.18 provides the requirements for disorders involving cerebral trauma.  20 C.F.R. § 404.1520, Subpt. P, App. 1.

L5-S1 performed in December 1999, and (5) a February 24, 2000 MRI
of the cervical spine indicating mild residual spinal stenosis
and kyphosis and mild bilateral C4-5 neural foraminal stenosis
without nerve impingement.  (A.R. at 21-25.)  The ALJ also
specifically identified the plaintiff's severe impairments as
chronic neck pain syndrome and chronic lower back pain syndrome.
(Id. at 20.)  The ALJ considered the plaintiff's testimony and
credibility as to her symptoms of pain and the medical records
presented.  (Id. at 24-25.)  The ALJ's review of the medical
evidence was sufficiently thorough under the Jones standard to
warrant a finding that the plaintiff's condition did not match or
medically equal any Listing.

     The Court also concludes that the ALJ's determination that
the plaintiff's impairments did not meet or medically equal one
of the listed impairments is supported by substantial evidence.
The ALJ stated that he considered Listings 1.00ff, and 11.00ff,
and particularly considered Listings 1.04 and 11.18.  (A.R. at
20.)  The ALJ determined that "no treating or examining physician
ha[d] mentioned findings equ[al] in severity to the criteria of
any listed impairment."  (Id.)  The ALJ specifically referenced
that a "detailed description of the medical evidence" discussed
later in the opinion "illustrates that the [plaintiff's]
impairments do not meet any Listing criteria."  (Id.)[4]

---

[4] "[T]he burden is on the claimant to present medical
findings that show his or her impairment matches a listing or is

10

The ALJ stated that he particularly considered Listings 1.04 and 11.18.  Listing 1.04A requires a disorder of the spine resulting in the compromise of a nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss accompanied by sensory or reflex loss and positive straight leg raising test."  Id.  The Commissioner does not dispute and the record adequately reflects that the plaintiff presented evidence of limitation of spinal motion.  (Def. Br., at 19.)  There is also evidence in the record of positive straight leg raising tests in January 2002 and December 2003.  (A.R. at 242, 277-79.)  Further, the plaintiff's sensory examinations in 2000 and 2004 were abnormal.  (Id. at 242, 328.)

The record, nonetheless, contains virtually no evidence of "motor loss" to satisfy Listing 1.04A.  The plaintiff's treating physician, Dr. Glastein, noted in (1) March 2002 that the plaintiff was intact upon motor examination, and (2) January 2004 that the plaintiff's motor exam was "5/5 strength."  (Id. at 289,

---

equal in severity to a listed impairment."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 n.2 (3d Cir. 2000). "[E]quivalence to a listed impairment must be determined on the basis of medical findings 'supported by medically acceptable clinical and laboratory techniques.'" Ballardo v. Barnhart, 68 Fed.Appx. 337, 338 (3d Cir. 2003) (quoting 20 C.F.R. § 404.1526(a) & (b)).  If the claimant fails to satisfy his or her burden of production, the "ALJ [is] not required to articulate specific reasons that [the claimant's] impairment was not equal in severity to any of the statutorily listed impairments."  Id.

328.)  Moreover, Dr. Banger stated in July 2004 that the
plaintiff had "no motor or sensory abnormality in [her] lower
extremities." (Id. at 311.)  Therefore, the plaintiff has failed
to satisfy her burden of production to qualify her under Listing
1.04A.

Listing 1.04C requires a disorder of the spine resulting in
compromise of a nerve root or the spinal cord with "[l]umbar
spinal stenosis resulting in pseudoclaudication, established by
findings on appropriate medically acceptable imaging, manifested
by chronic nonradicular pain and weakness, and resulting in
inability to ambulate effectively, as defined in [Listing]
1.00B2b." Id.  Listing 1.00B2b provides that

> to ambulate effectively, individuals must be capable of
> sustaining a reasonable walking pace over a sufficient
> distance to be able to carry out activities of daily
> living.  They must have the ability to travel without
> companion assistance to and from a place of employment or
> school.  Therefore, examples of ineffective ambulation
> include, but are not limited to, the inability to walk
> without the use of a walker, two crutches or two canes,
> the inability to walk a block at a reasonable pace on
> rough or uneven surfaces, the inability to use standard
> public transportation, the inability to carry out routine
> ambulatory activities, such as shopping and banking, and
> the inability to climb a few steps at a reasonable pace
> with the use of a single hand rail.  The ability to walk
> independently about one's home without the use of
> assistive devices does not, in and of itself, constitute
> effective ambulation.

Id.

The record shows that the plaintiff was first diagnosed —
after a cervical spine MRI in February 2000 — with (1) mild
residual spinal stenosis, and (2) mild bilateral C4-5 neural

12

foraminal stenosis without nerve impingement.  (A.R. at 267.)
The plaintiff was first observed using a cane in her July 8, 2004
visit with Dr. Banger.  However, Dr. Banger indicated that the
"[o]bjective findings do not correlate with [the plaintiff's]
need for the cane."  (Id. at 310-13.)  Dr. Glastein also noted
that she was using a cane in his RFC assessment in December 2004,
but none of his previous reports indicates that she was using a
cane or that she was required to use a cane.  (Id. at 332-34.)
As of January 23, 2004, Dr. Glastein reported that plaintiff's
heel and toe walk were normal.  (Id. at 328.)  Although the
plaintiff was involved in another motor vehicle accident in May
2004, Dr. Glastein did not indicate in his reports that the
plaintiff had to use a cane to ambulate.  For all of the above
reasons, the plaintiff failed to present evidence of an inability
to ambulate effectively under 1.04C.  The Court finds that
substantial evidence supports the ALJ's conclusion that the
plaintiff's impairments did not meet or medically equal a
listing.

**B.   The Sufficiency of the ALJ's RFC Assessment at Step Five**

The plaintiff contends that the ALJ did not adequately
explain the basis for her RFC determination.  (Pl. Br., at 18.)
The plaintiff argues that the ALJ (1) improperly assessed her
RFC, and (2) asked the vocational expert improper or inadequate
questions.  (Id. at 18.)

13

1.    The Adequacy of the RFC Assessment

The plaintiff posits that the ALJ's explanation of a sedentary work RFC determination violates the <u>Burnett</u> standard. (<u>Id.</u> at 18.)  The plaintiff asserts that the ALJ simply made an RFC determination without supporting evidence.  (<u>See id.</u> at 17 ("An ALJ must not simply recite the evidence and then announce a finding.  There must be interplay between the two.").)  The Court disagrees.  The ALJ did recite the evidence in the record; however, the ALJ also (1) justified the reasoning for concluding that the plaintiff's RFC was sedentary and (2) explained why he rejected the plaintiff's medical evidence and, in particular, Dr. Glastein's report.  The ALJ pointed out that Dr. Glastein had "failed to distinguish [the plaintiff's] acute symptoms from [two recent motor vehicle accidents] against her persistent symptoms from her degenerative disease."  (<u>Id.</u> at 24.)  The ALJ also found that Dr. Glastein's report was inconsistent with the preponderance of the medical evidence.  (<u>Id.</u>)

The ALJ concluded that the plaintiff

retains the RFC to lift and carry up to 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk for 2 hours in an 8 hour workday and can occasionally climb stairs, balance, kneel, crouch, crawl, or stoop.  She has decreased ability to perform gross or fine manipulative tasks with her left non-dominant hand and cannot be exposed to unprotected heights or moving machinery, vibration and temperature extremes.

(A.R. at 26.)  The ALJ supported this determination with an

14

examination of all of the available medical and testimonial
evidence, including the plaintiff's testimony and that of state
agency physicians.  Contrary to the plaintiff's contention, the
record did not include documentation supporting her need to use a
cane to ambulate.  The plaintiff testified that her doctor had
not recommended or prescribed her to use a walker.  (A.R. at
585.)  The plaintiff provides no supporting argument to discredit
the reports of Dr. Banger and Dr. Potashnik, and the ALJ's RFC is
consistent with their reports.  (A.R. at 281-86, 315-18.)

> 2.   The ALJ's Questioning of the Vocational
>      Expert

The plaintiff contends that the ALJ erred by failing to ask
the vocational expert "whether a person who cannot move their
neck, cannot flex their back (both due to fusions, rods, bolts
and screws) and must walk with a cane can still work at any job."
(Pl. Br., at 19.)  The Court finds that the ALJ's questions
"reflected all of the claimant's impairments supported by the
record." Chrupcala v. Heckler, 829 F.3d 1269, 1276 (3d Cir.
1987).  The ALJ specifically included in the questioning to the
vocational expert the concern that the "hypothetical worker has
limitations of movement due to a cervical spine and a lower back
problem so that if there is dangerous equipment, she would have
trouble avoiding it."  (A.R. at 592.)  Also, despite the
plaintiff's contentions, there was no evidence in the record
before the ALJ at the time of the hearing that the plaintiff

"must walk with a cane." (Pl. Br., at 19.)  Instead, the only
reference in the record at that time, as explained supra, was
that she appeared at Dr. Banger's July 2004 examination using a
cane.  However, Dr. Banger indicated that the objective findings
did not support her need for a cane.  Further, although Dr.
Glastein indicated in his December 10, 2004 report that the
plaintiff was using a cane, there is no evidence in the record
that the plaintiff had to use a cane to ambulate effectively.

**C.    The ALJ's Evaluation of the Plaintiff's Subjective
        Complaints of Pain**

The plaintiff argues that the ALJ improperly evaluated her
complaints of pain, and disregarded the opinion of her treating
physician, Dr. Glastein.  (Pl. Br., at 19-24.)  The plaintiff's
contentions are without merit.

1.    The ALJ's Evaluation of Dr. Glastein's Opinion

The plaintiff argues that the ALJ failed to give sufficient
consideration to the medical reports of her treating physician,
Dr. Cary Glastein ("Glastein").  (Pl. Br., at 23-24.)  The Court
finds that the ALJ sufficiently explained why he assigned less
weight to Glastein's reports than he did to other assessments in
the medical record.

In deciding whether a claimant is disabled, the SSA
"review[s] all of the medical findings and other evidence that
supports a medical source's statement that [a claimant is]
disabled."  20 C.F.R. § 404.1527(e)(1).  Nonetheless, merely

16

because a medical source states that a claimant is "disabled" or "unable to work" does not necessarily mean that the SSA will determine the claimant to be disabled.  Id.  Treating physicians' opinions on the nature and severity of a plaintiff's impairments, however, are given controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record.  Id. § 404.1527(d)(2).

An ALJ is required to review all of the medical findings and other evidence presented in support of a physician's opinion that a plaintiff is totally disabled.  Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994).  In rejecting a treating physician's testimony, an ALJ may not (1) "make speculative inferences from medical reports;" (2) rely on the ALJ's "own expertise against that of a physician who presents competent medical evidence;" or (3) "reject evidence for no reason or for the wrong reason."  Plummer, 186 F.3d at 429.  Thus, an ALJ may not reject a treating physician's medical opinion testimony based solely on the ALJ's "own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  If, after considering all of the relevant evidence, an ALJ decides to credit other evidence over a treating physician's testimony, the reason for doing so must be explained.  Plummer, 186 F.3d at 429. An ALJ may only outright reject the medical judgment and opinion

17

testimony of a treating physician if the opinion is contradicted by medical evidence in the record.   Id.

The ALJ here sufficiently considered and explained why he assigned little weight to Glastein's medical evaluation. Glastein examined the plaintiff and determined that she "suffered from cervical radiculitis, degenerative disc disease, lumbar radiculopathy and sprain and strain of the cervical spine" on December 10, 2004.  (A.R. at 24.)  As a result of this assessment, Glastein determined that the plaintiff was "permanently disabled," noting that she "could not lift or carry any amount of weight, could stand for no more than thirty minutes at a time and only sit for about two hours and was unable to walk any distance . . . [and that she] used a cane and as a result might have difficulty with pushing or pulling objects."  (Id.) However, unlike the other examining physicians and medical sources, Glastein did not provide any objective medical evidence or test results that validated his conclusions regarding the extent of the plaintiff's incapacitation.  (Id.)[5]

Although Glastein determined the plaintiff to be "permanently disabled," the ALJ correctly evaluated the

_____

[5] The ALJ also considered the medical assessments of the following sources: (1) Dr. Ronald Banger, who evaluated the plaintiff on October 3, 2000 and July 8, 2004; (2) the New Jersey Division of Disability Determinations Services ("DDS"), a service that determined the plaintiff's RFC on February 2, 2001 and February 5, 2002; and (3) Dr. Rashel Potashnik, an orthopedic consultant that examined the plaintiff on January 31, 2002. (A.R. at 21-24.)

plaintiff's condition in the context of the entire medical
record.  Adorno, 40 F.3d at 48.  The ALJ summarized the
evaluations of the other medical examiners and accorded greater
weight to those reports that also provided objective medical
findings in support of their conclusions.  (A.R. at 21-24.)  For
example, the ALJ "assign[ed] significant weight to Dr. Banger's
report" from July 8, 2004, which stated that the plaintiff had
"no motor or sensory deficits in the lower extremities and no
atrophy was noted in the gluteal thigh or calf musculature."
(Id. at 23.)  Also, while Banger noted that the plaintiff used a
cane to ambulate, he concluded that her purported need for such
assistance "did not correlate" with the "objective findings."
(Id.)  While Banger set forth a thorough analysis of the
objective test results, Glastein's report from December 2004
provided little objective medical evidence to support his
conclusions.  (Id. at 23-24.)  As these conclusions were
"inconsistent with the preponderance of the medical evidence,"
the ALJ accordingly assigned Glastein's evaluation little weight.
(Id.)

     The plaintiff claims that (1) insufficient weight was given
to Glastein's opinion that she is "permanently disabled," and (2)
"nothing in the administrative record . . . remotely suggest[s]
that [she] was not in constant, unremitting pain."  (Pl. Br., at
23.)  First, determining whether a claimant is disabled is a

decision ultimately reserved for the ALJ.  20 C.F.R. §
404.1527(e).  Therefore, the ALJ was not required to accept
Glastein's opinion.  Id.  Second, as will be discussed infra, the
plaintiff's subjective complaints of pain are not the test for a
disability, and the ALJ is not required to accept them as
conclusive evidence.  42 U.S.C. § 423(d)(5)(A).

> 2.   The ALJ's Assessment of the Plaintiff's Subjective
>      Complaints

The plaintiff also argues that the ALJ improperly assessed
her complaints of pain.  (Pl. Br., at 19-23.)  The plaintiff
points out that she had two spinal fusions in her neck and one in
her back.  (Id. at 23.)  The plaintiff also asserts that, inter
alia, she (1) "has no use of her left hand to grip objects," (2)
"has undergone denervation procedures, epidural injections and
blocks, and physical therapy," (3) takes Vicodin daily, (4) walks
with a cane and her doctor "recommended a walker," and (5) is
otherwise unable to walk unassisted or do household chores and
shopping because of pain.  (Id.)  The plaintiff asserts that
"[t]here is absolutely nothing in the administrative record which
would even remotely suggest that [she] was not in constant,
unremitting pain."  (Id.)  The Court finds that substantial
evidence supports the ALJ's assessment.

A claimant's symptoms are considered, including complaints
of pain, when making a determination of a disability.  20 C.F.R.
§ 404.1529(a).  The symptoms are considered to the extent they

20

can "reasonably be accepted as consistent with the objective
medical evidence and other evidence." Id.  The ALJ has
discretion in weighing the credibility of a claimant when
evaluating subjective complaints.  Edwards v. Comm'r of Soc.
Sec., 989 F.Supp. 657, 660 (D.N.J. 1998).  The subjective
complaints must be viewed in light of the medical evidence in the
record, and objective medical evidence must support the
claimant's complaints.  Id.  "Subjective symptomology cannot, by
itself, be the basis for a finding of disability."  Joyce v.
Shalala, No. 94-01901, 1997 WL 998582, at *6 (D.N.J. Oct. 17,
1997); 20 C.F.R. § 404.1529(c)(2).  Rather, the claimant must
demonstrate through medical evidence the existence of an
underlying condition which must reasonably be expected to produce
the symptoms alleged.  20 C.F.R. § 404.1529(b).

When a claimant complains of pain and establishes the
existence of a medical impairment that could reasonably be
expected to produce the pain, the ALJ must "determine the extent
to which [the] claimant is accurately stating the degree of pain
or the extent to which he or she is disabled by it."  Hartranft
v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  In making this
determination, the ALJ may consider (1) daily activities; (2) the
duration, frequency, location, and intensity of the pain or other
symptoms; (3) precipitating and aggravating factors; (4) the
"type, dosage, effectiveness, and side effects of any medication

21

. . . taken to alleviate [the] pain or other symptoms"; (5)
"treatment, other than medication . . . received for relief of
[the] pain or other symptoms"; (6) any other measures used to
relieve the pain or symptoms; and (7) "other factors concerning .
. . functional limitations and restrictions due to pain or other
symptoms."  20 C.F.R. § 416.929(c)(3).  Where subjective
complaints of pain are supported by medical evidence, a
plaintiff's complaints of pain must be given "great weight" and
cannot be discounted unless contrary medical evidence exists.
Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).[6]

　　　The plaintiff contends that the ALJ provided only a cursory
"pain evaluation," consisting of the following analysis:

> I believe that the claimant has some subjective symptoms,
> but not of the intensity, frequency or duration alleged.
> The functional limitations alleged by the claimant did
> not seem credible because her testimony seemed overly
> vague, dramatic and exaggerated considering the objective
> medical findings and she needed much prompting and
> leading by her representative.

(Pl. Br., at 22-23 (citing A.R. at 25.).)  However, the ALJ
conducted a more thorough analysis than alleged.  Immediately
following the above statement, the ALJ considered (1) the

_____

[6] See Turby v. Barnhart, 54 Fed.Appx. 118, 121-22 (3d Cir.
2002) (failing to draw distinction between assessment of
plaintiff's subjective complaints of physical impairments versus
mental impairments); Rotshteyn v. Massanari, 158 F.Supp.2d 525,
533-34 (E.D. Pa. 2001) (analyzing plaintiff's subjective
complaints of physical and mental impairments under same standard
as applied to assessment of subjective complaints of physical
impairment).

plaintiff's automobile accidents in 1996 and 1998, (2) the
plaintiff's surgeries and the "excellent" results from the
surgeries, (3) the plaintiff's complaints of neck and low back
pain to Dr. Glastein, (4) Dr. Potashnik's observations in January
2002, and (5) Dr. Banger's observations in July 2004.  (A.R. at
25.)  The ALJ noted that although the plaintiff stated that she
had pain in her neck, shoulders, back, and legs, Dr. Potashnik
found that the plaintiff had a normal range of motion and good
muscle strength in her upper and lower extremities.  (<u>Id.</u>)  Dr.
Banger made similar observations in July 2004, and noted in
particular, the lack of atrophy in the gluteal, thigh or calf
musculature.  (<u>Id.</u>)  The ALJ found that the absence of atrophy
demonstrated that the plaintiff's functional limitations and
symptoms were less severe than alleged.  (<u>Id.</u>)  The ALJ's
conclusion that the plaintiff's subjective complaints were
inconsistent with the medical findings is supported by
substantial evidence.[7]

---

[7] The Court further notes that to the extent the ALJ found
the plaintiff's testimony to be "overly vague, dramatic and
exaggerated," the Court generally defers to an ALJ's credibility
determination because the ALJ is present at the hearing and can
assess a claimant's demeanor.  <u>Reefer</u>, 326 F.3d at 380.

## CONCLUSION

The Court, finding that the Commissioner's decision was supported by substantial evidence, will therefore affirm the Commissioner's denial of the plaintiff's claim.  The Court will issue an appropriate order.


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge